UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| YUKSEL CELIKGOGUS, *et al.*, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | | |
| v. | | Civil No. 06–1996 (RCL) |
| DONALD RUMSFELD, *et al.*, | | |
| Defendants. | | |
| SAMI ABDULAZIZ AL LAITHI, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | Civil No. 08–1677 (RCL) |
| DONALD RUMSFELD, *et al.* | | |
| Defendants. | | |

## MEMORANDUM OPINION

The six plaintiffs in this action—Yuksel Celikgogus, Ibrahim Sen, Nuri Mert, Zakirjan Hasam, Abu Muhammad, and Sami Al Laithi[1]—were held by the United States at the Guantanamo Bay detention facility where they allege that they were abused by defendants or at defendants' direction. They bring these consolidated actions against numerous U.S. officials, asserting claims under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350; the First and Fifth Amendments to the U.S. Constitution; the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*; and the Civil Rights Act of 1871, 42 U.S.C. § 1985(3). Three of the

---

[1] Plaintiff Al Laithi's case was consolidated with the *Celikgogus* case after all briefing on both motions to dismiss was completed. *See* Order, *Al Laithi*, ECF No. 51.

men allege that abuses occurred after a Combatant Status Review Tribunal determined that the three men were not enemy combatants.

Defendants have moved to dismiss plaintiffs' complaints for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. *Celikgogus*, Defs.' Mot., ECF No. 43; *Al Laithi*, Defs.' Mot., ECF No. 10. Because all of these claims are legally indistinguishable from those rejected by the D.C. Circuit in *Rasul v. Myers* (*Rasul I*), 512 F.3d 644 (D.C. Cir. 2008), *cert. granted, judgment vacated*, 555 U.S. 1083 (2008), *judgment reinstated Rasul v. Myers* (*Rasul II*), 563 F.3d 527 (D.C. Cir. 2009), the Court will GRANT defendants' motions to dismiss.

## I.   BACKGROUND

The following are the facts of the case as alleged in plaintiffs' complaints, *Celikgogus*, 2d Am. Compl., ECF No. 37; *Al Laithi*, Compl., ECF No. 1, which the Court must take as true while resolving defendants' motions to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

Plaintiffs are foreign nationals who came to Afghanistan, Tajikistan, or Pakistan as refugees or in search of employment. *See Celikgogus*, 2d Am. Compl. ¶¶ 9–13, 53, 77, 98, 124, 148; *Al Laithi*, Compl. ¶ 11, 30. After the United States began bombing Afghanistan in October 2001, Mr. Celikgogus, Mr. Sen, and Mr. Al Laithi were arrested by Pakistani authorities while fleeing Afghanistan, *Celikgogus*, 2d Am. Compl. ¶¶ 53, 77, *Al Laithi*, Compl. ¶ 30, and Mr. Mert was captured in Afghanistan by unknown armed men. *Celikgogus*, 2d Am. Compl. ¶ 98. Around the same time, Mr. Hasam was forcibly taken from Tajikistan into Afghanistan, *Celikgogus*, 2d Am. Compl. ¶ 124, and Mr. Muhammad was arrested in his home by Pakistani authorities. *Celikgogus*, 2d Am. Compl. ¶¶ 148–49. Each was subsequently transferred into

U.S. custody. *Celikgogus*, 2d Am. Compl. ¶¶ 54, 78, 99, 124–25, 150; *Al Laithi*, Compl. ¶ 32. Mr. Hasam and Mr. Muhammad were initially detained at the Bagram airbase near Kabul while Mr. Celikgogus, Mr. Sen, Mr. Hasam, Mr. Mert, and Mr. Al Laithi were detained at the U.S. airbase in Kandahar. *Celikgogus*, 2d Am. Compl. ¶¶ 35–43; *Al Laithi*, Compl. ¶¶ 33–45.

All were subsequently transferred to the U.S. detention facility at Guantanamo Bay, Cuba. *Celikgogus*, 2d Am. Compl. ¶ 45; *Al Laithi*, Compl. ¶ 46. Four of the plaintiffs (Mr. Celikgogus, Mr. Sen, Mr. Mert, and Mr. Al Laithi) were initially held at Camp X-Ray, where they allege that they were subjected to harsh conditions including sleep deprivation, exposure to extreme heat and cold, being forced to defecate in public, being prohibited from practicing their religion, and other abuse. *Celikgogus*, 2d Am. Compl. ¶ 46; *Al Laithi*, Compl. ¶¶ 50–54. Camp X-Ray was replaced by Camp Delta in April 2002, where all six plaintiffs were held. *Celikgogus*, 2d Am. Compl. ¶ 47; *Al Laithi*, Compl. ¶ 55. All plaintiffs allege that they were subjected to harsh conditions including sleep deprivation, arbitrary discipline, forced nudity, and a variety of physical, psychological, and cultural abuse. *Celikgogus*, 2d Am. Compl. ¶¶ 47–51; *Al Laithi*, Compl. ¶¶ 56–66.

In late 2004, the U.S. Department of Defense instituted Combatant Status Review Tribunals ("CSRTs"), an administrative process to determine whether a detainee was an "enemy combatant." *Celikgogus*, 2d Am. Compl. ¶ 52; *Al Laithi*, Compl. ¶ 67; *see also Boumediene v. Bush,* 553 U.S. 723, 733 (2008). Mr. Hasam, Mr. Muhammad and Mr. Al Laithi each had CSRT hearings which determined that they were *not* enemy combatants. *Celikgogus*, 2d Am. Compl. ¶ 52; *Al Laithi*, Compl. ¶ 67. Mr. Hasam and Mr. Muhammad were detained for seventeen months after this determination. *Celikgogus*, 2d Am. Compl. ¶ 52. Mr. Al Laithi was

detained for ten months after his favorable CSRT ruling. *Al Laithi*, Compl. ¶ 68. All three allege that abuse continued during this post-CSRT detention.

All plaintiffs were ultimately released from U.S. custody: Mr. Celikgogus, Mr. Mert and Mr. Sen were returned to Turkey, Mr. Hasam and Mr. Muhammad were sent to Albania, and Mr. Al Laithi was sent to Egypt. *Celikgogus*, 2d Am. Compl. ¶¶ 73, 94, 120, 146, 172; *Al Laithi*, Compl. ¶ 70. All allege ongoing medical, psychological, and social problems resulting from their detention. *Celikgogus*, 2d Am. Compl. ¶¶ 73–76, 94–97, 120–23, 146–47, 172–73; *Al Laithi*, Compl. ¶ 70–71.

Plaintiffs brought these consolidated actions against former Secretary of Defense Donald Rumsfeld and numerous military personnel—ranging from former Chairman of the Joint Chiefs of Staff General Richard Myers to individual guards and interrogators at Guantanamo (named as John Does). *Celikgogus*, 2d Am. Compl. ¶¶ 14–30; *Al Laithi*, Compl. ¶¶ 12–25.

## II.    LEGAL STANDARDS

A defendant may move to dismiss a complaint or claim for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In response, the plaintiff must show that her claims lie within "the judicial Power of the United States," U.S. Const. art. III, § 1, and that a federal statute grants the Court jurisdiction to hear those claims. *Micei Int'l v. Dep't of Commerce*, 613 F.3d 1147, 1151 (D.C. Cir. 2010).

A defendant may also move to dismiss a complaint or claim for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). A complaint must recite facts sufficient to "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation

of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

Plaintiffs raise four types of claims: (i) ATS claims; (ii) *Bivens* claims based on the First and Fifth Amendments; (iii) RFRA claims; and (iv) claims of conspiracy to deprive plaintiffs of their civil rights under 42 U.S.C. § 1985(3). For the reasons discussed below, all of these claims fail.

### A. ATS Claims

#### 1. Legal Standard

The Alien Tort Statute ("ATS") provides that "district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. The ATS does not create a cause of action, but gives courts jurisdiction over "claims in a very limited category defined by the law of nations and recognized at common law" circa 1789. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 712–24 (2004).

ATS claims against federal employees are subject to the Westfall Act, 28 U.S.C. § 2671 *et seq.*, which provides, in pertinent part:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1). "Once a court determines that the federal employee acted within the scope of employment, the case is, inter alia, restyled as an action against the United States that is governed by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680."

*Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006). The FTCA provides that "[a]n action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). "[T]he failure to exhaust administrative remedies [is] jurisdictional." *Rasul I*, 512 F.3d at 661.

"[T]he Attorney General's certification that a federal employee was acting within the scope of his employment . . . does not conclusively establish as correct the substitution of the United States as defendant in place of the employee," *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995), but it does "constitute prima facie evidence that the employee was acting within the scope of his employment." *Ballenger*, 444 F.3d at 662 (citing *Kimbro v. Velten*, 30 F.3d 1501, 1509 (D.C. Cir. 1994)). "[A] plaintiff challenging the government's scope-of-employment certification bears the burden of coming forward with specific facts rebutting the certification." *Stokes v. Cross*, 327 F.3d 1210, 1214 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

In answering the scope-of-employment question, District of Columbia courts employ the Restatement of Agency, which provides:

> Conduct of a servant is within the scope of employment if, but only if:
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and space limits;
> (c) it is actuated, at least in part, by a purpose to serve the master, and
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

Restatement (Second) of Agency § 228(1) (1958); *see also Rasul I*, 512 F.3d at 655. A servant's conduct must meet all four prongs in order to fall within the scope of her employment. *See Majano v. United States*, 469 F.3d 138, 141 (D.C. Cir. 2006). This test is applied "very

6

expansively" and "often is akin to asking whether the defendant merely was on duty or on the job when committing the alleged tort." *Harbury v. Hayden,* 522 F.3d 413, 422 n.4 (D.C. Cir. 2008).

In *Rasul I*, the D.C. Circuit applied these principles to dismiss ATS claims brought by former Guantanamo detainees based on allegations of abuse. *See Rasul I*, 512 F.3d at 655–61 (analyzing D.C. law on the scope-of-employment question). The circuit concluded that the abuse of detainees by U.S. officials at Guantanamo was within the scope of their employment so that, under the Westfall Act, the United States was substituted as defendants, and plaintiffs were required to exhaust administrative remedies under the FTCA—which they failed to do. *See id.* The court explained, "the underlying conduct—here, the detention and interrogation of suspected enemy combatants—is the type of conduct the defendants were employed to engage in," *id.* at 658, and the alleged abuse was "incidental to the defendants' legitimate employment duties." *Id.* at 659; *see also Rasul II*, 563 F.3d at 529.

More recently, in *Ali v. Rumsfeld*, the D.C. Circuit held again that military personnel who allegedly ordered or allowed the abuse of detainees in Iraq and Afghanistan were acting within the scope of their employment. 649 F.3d 762, 775 (D.C. Cir. 2011) (citing *Rasul I*, 512 F.3d at 654–61). Accordingly, the *Ali* court affirmed the dismissal of ATS claims against those personnel for failure to exhaust FTCA administrative procedures. *Id.*

### 2. Analysis

Plaintiffs assert several ATS claims,[2] all of which are legally indistinguishable from those addressed by the D.C. Circuit in *Rasul I*, 512 F.3d at 656–58, and thus fail for lack of

---

[2] Specifically, plaintiffs assert ATS claims based on:

(1) Prolonged arbitrary detention, *Celikgogus*, 2d Am. Compl., Count I, ¶¶ 189–192, *Al Laithi*, Compl. Count I, ¶¶ 88–91;

subject matter jurisdiction. As the *Rasul I* court found, "the detention and interrogation of suspected enemy combatants is a central part of the defendants' duties as military officers charged with winning the war on terror." 512 F.3d at 658. As in *Rasul*, the plaintiffs here were detained by the U.S. in the course of military operations in the war on terror. And, as in *Rasul*, the Attorney General has certified that defendants were acting within the scope of their employment, *Celikgogus*, Certification, ECF No. 43–1; *Al Laithi*, Certification, ECF No. 10–1, creating a rebuttable presumption that plaintiffs have the burden to overcome. *See Stokes*, 327 F.3d at 1214. Plaintiffs fail to carry this burden, offering no reason to question the Attorney General's certification here and distinguish their case from *Rasul*.

Mr. Hasam, Mr. Muhammad, and Mr. Al Laithi complain of abuse occurring *after* they had been cleared as non-enemy combatants by CSRTs, and suggest that this distinguishes them from the plaintiffs in *Rasul*. *Celikgogus*, Pls.' Opp'n 13–21, *Al Laithi*, Pl.'s Opp'n 12–16. The Court disagrees. It finds that the CSRT-clearance is, for purposes of determining scope of employment, a "distinction without a difference," *See Celikgogus*, Defs.' Reply 2; *Al Laithi*, Defs.' Reply 2, and that plaintiffs have failed to meet their burden by "coming forward with specific facts rebutting the [Attorney General's] certification" and explaining why the CSRTs should be accorded legal significance in this Court for the scope-of-employment issue. *See Stokes*, 327 F.3d at 1214. The CSRTs did not change the fact the plaintiffs were detainees of the

---

(2) Torture, *Celikgogus*, 2d Am. Compl., Count II, ¶¶ 193–199, *Al Laithi*, Compl. Count II, ¶¶ 92–98;

(3) Cruel, inhuman or degrading treatment or punishment, *Celikgogus*, 2d Am. Compl., Count III, ¶¶ 200–206, *Al Laithi*, Compl. Count III, ¶¶ 99–105;

(4) The Geneva Conventions, including Common Article 3, which prohibits "outrages upon personal dignity, in particular, humiliating and degrading treatment," *Celikgogus*, 2d Am. Compl., Count IV, ¶¶ 207–211, *Al Laithi*, Compl. Count IV, ¶¶ 106–110; and

(5) The Vienna Convention on Consular Relations (plaintiffs Sen and Mert only), *Celikgogus*, 2d Am. Compl., Count V, ¶¶ 212–216.

U.S. military as part of its operations in conducting the war on terror. Indeed, the CSRTs appear not to have had much significance even within Guantanamo itself as the three CSRT-cleared plaintiffs were detained for many months thereafter. *See Celikgogus*, 2d Am. Compl. ¶ 52; *Al Laithi*, Compl. ¶ 68. Given the apparent lack of significance accorded to the CSRTs on the ground at the time they were in use, this Court will not retroactively accord the legal significance to these procedures that plaintiffs now seek. Nothing in *Rasul I*'s holding that detainee-abuse was within defendants' scope of employment indicated that this determination rested upon the outcome of any administrative procedure. Accordingly, *Rasul I* is no less applicable to detainee-plaintiffs who were held after being cleared by CSRTs than to those who were never subjected to that procedure. *See Rasul I*, 512 F.3d at 658.

Plaintiffs attempt to bolster their failed CSRT distinction by referring to the statutory limits on executive authority established in the Authorization for Use of Military Force ("AUMF"). 50 U.S.C. § 1541. *See Celikgogus*, Pls.' Opp'n 17; *Al Laithi*, Pl.'s Opp'n 13. But while that statute provides the President to use "all necessary and appropriate force" against terrorists and their supporters, it does not make CSRTs a legally authoritative procedure to determine appropriate targets. Indeed, it does not mention CSRTs at all, which were implemented years after it was enacted.

The alleged abuse that is the subject of plaintiffs' ATS claims was therefore entirely within the scope of defendants' employment. Under the Westfall Act, the United States is substituted as a defendant on these claims. Plaintiffs must demonstrate compliance with the FTCA's administrative exhaustion requirements. *See* 28 U.S.C. § 2675(a). In this case, as in *Rasul I*, plaintiffs would have had to "file an administrative claim with either the Department of Defense (DoD) or the appropriate military department before bringing suit." *Rasul I*, 512 F.3d at

661 (citing 28 C.F.R. § 14.1). As in *Rasul I*, because there is no evidence that those procedures have been followed, the Court lacks subject matter jurisdiction over these claims.[3] *See id.*

### B. *Bivens* Claims

Plaintiffs allege that their abuse by defendants violated the First and Fifth Amendments to the Constitution, asserting claims under *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971). *See Celikgogus*, 2d Am. Compl. Counts VI–VII, ¶¶ 217–230; *Al Laithi,* Compl. Counts V–VI, ¶¶ 111–124. Defendants are entitled to immunity for these claims.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants are entitled to qualified immunity unless the plaintiffs alleged (1) a violation of a constitutional right that (2) was "clearly established" at the time of violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

In *Rasul II*, the court "exercis[ed] the *Pearson* option with regard to plaintiffs' *Bivens* claims," *Rasul II*, 563 F.3d at 530, and determined that the plaintiffs' Fifth and Eighth Amendment rights were not "clearly established" at the time of the alleged violations. *See id.* at 530–32. The court reasoned that "[a]t the time of [plaintiffs'] detention, neither the Supreme Court nor this court had ever held that aliens captured on foreign soil and detained beyond

---

[3] Plaintiffs also request that they be permitted to conduct discovery into the scope of defendants' employment. *Celikgogus*, Pls.' Opp'n 22–23; *Al Laithi*, Pl.'s Opp'n 17–19. As in *Rasul I*, the Court denies this request because "discovery is not warranted if the plaintiff did not allege any facts in his complaint or in any subsequent filing that, if true, would demonstrate that [the defendant] had been acting outside the scope of his employment." *Rasul I*, 512 F.3d at 662 (internal quotations omitted) (quoting *Stokes v. Cross*, 327 F.3d 1210, 1216 (D.C. Cir. 2003)).

sovereign U.S. territory had any constitutional rights." *Rasul II*, 563 F .3d at 530; *see also Rasul I*, 512 F.3d at 666 ("An examination of the law at the time the plaintiffs were detained reveals that . . . courts did not bestow constitutional rights on aliens located outside sovereign United States territory."); *Ali,* 649 F.3d at 770–73; *In re Iraq & Afghanistan Detainees Litig.*, 479 F. Supp. 2d 85, 108–110 (D.D.C. 2007).

Again, plaintiffs' constitutional claims fail because they are legally indistinguishable from those addressed in *Rasul II*. Because it was not "clearly established" at the time of the alleged violations that "aliens captured on foreign soil and detained beyond sovereign U.S. territory had any constitutional rights," defendants are entitled to qualified immunity on these claims. *See Rasul II*, 563 F.3d at 530.

### C. RFRA

Plaintiffs' RFRA claims, *see Celikgogus*, 2d Am. Compl. Count VIII, ¶¶ 231–237; *Al Laithi*, Compl. Count VII, ¶¶ 125–131, are likewise barred by *Rasul*. RFRA provides that the "Government shall not substantially burden a person's exercise of religion," unless certain conditions are met. *See* 42 U.S.C. § 2000bb–1(a)–(b). But the *Rasul II* court explained that nonresident aliens are not protected "persons" under this statute. 512 F.3d at 671–72. Because plaintiffs were non-resident aliens at the time of the alleged RFRA violations, their RFRA claims must also be dismissed for failure to state a claim.

### D. Federal Civil Rights Act Claims

Finally, plaintiffs also raise Federal Civil Rights Act claims. *Celikgogus*, 2d Am. Compl. Count IX, ¶¶ 238–239; *Al Laithi*, Compl. Count VIII, ¶¶ 132–135. Section 1985(3) of Title 42 of the U.S. Code provides a right of action for damages for the victim of a conspiracy by two or more persons with "the purpose of depriving, either directly or indirectly, any person or class of

persons of the equal protection of the laws . . . ." 42 U.S.C. § 1985(3). These claims fail because defendants are entitled to qualified immunity for any violation of plaintiffs' equal protection rights. As discussed above, it was not clearly established at the time of the alleged violations that plaintiffs, as non-resident aliens, had any such rights under the Constitution. Accordingly, these claims will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' complaints will be dismissed for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction.

An order will issue with this opinion.

Signed by Royce C. Lamberth, Chief Judge, on February 1, 2013.